IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT RAY HORSCH,** : |  |
| **Plaintiff,** : |  |
| : |  |
| v. : | **CIVIL ACTION NO. 24-CV-1183** |
| : |  |
| **JOSEPH CANTYMAGLI,** *et al.*, : |  |
| **Defendants.** : |  |

**MEMORANDUM**

**SCHMEHL, J.**    **/S/ JLS**                                                                **APRIL   3, 2024**

Robert Ray Horsch, who is currently detained for a probation violation at Chester County Prison, filed this civil rights action under 42 U.S.C. § 1983 against two Probation Officers, Joseph Cantymagli and Tiffany Washington. Each are named in their individual and official capacities. Horsch has also applied to proceed *in forma pauperis*. For the following reasons, the request to proceed *in forma pauperis* will be granted and the case will be dismissed on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS**[1]

Horsch's  allegations are somewhat disjointed and difficult to understand. He claims that he is being mistreated and discriminated against because of his race, color, religious affiliation, and disability. (Compl. at 3.) Defendant Washington is alleged to have discriminated against him due to his religion and Defendant Cantymagli and Washington are alleged to have violated his right to be treated with dignity under the Americans with Disabilities Act ("ADA"). (*Id*. at

---

[1] The facts set forth in this Memorandum are taken from Horsch's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

4.) It appears that Horsch was required to attend counseling as part of his probation but encountered issues with scheduling counseling sessions. Horsch alleges that he attended a meeting with Washington in November 2022 in which she stated she had a problem "with all of us Jews think we are better then everyone and do not follow our probation." (*Id.* at 6.) Washington "violated [Horsch] for not completing counseling when she was also having issues with communication with the counseling program" that Horsch was attending. (*Id.*) Washington and Cantymagli allegedly took action to revoke Horsch's probation knowing that the counseling service Horsch was to attend itself admitted that it was responsible for scheduling delays due to Covid-related staffing issues, which Cantymagli allegedly admitted under oath at Horsch's *Gagnon I* violation hearing in December 2023. (*Id.* at 6, 13.)

Cantymagli also allegedly testified falsely at the hearing when he (1) stated that Horsch never wrote an apology letter as he was required to do, since Cantymagli knew Horsch had handed it to his previous probation officer Diane Clemens; and (2) accused Horsch of not completing a mental health evaluation, which was performed by Dr. Drew Ali Kaikis of Pathway Counseling in West Chester. (*Id.* at 13.) Horsch asserts that these accusations were frivolous and false. (*Id.* at 5, 14.[2]) Cantymagli and Washington also allegedly amended Horsch's violation for a "new case in Philadelphia," charging him with "absconding," "after they committed fraud and violated me from lies." (*Id.*) He asserts that the transcripts of his *Gagnon I* and *Gagnon II* hearings show that the counseling service admitted it was at fault for the scheduling difficulties. (*Id.*) Horsch also contends that Cantymagli seeks to have him reincarcerated for 2.5 to 5 years, when the sentencing guidelines are 8-11 months. (*Id.*) He

---

[2] Pages 5 and 14 of the Complaint appear to be duplicates.

asserts that both Defendants have overstepped their authority and misused their power. Cantymagli allegedly told him he would get a long sentence "and that I better run." (*Id*.)

Horsch cites several federal criminal statutes covering perjury, making false declarations, and treason (*id*. at 13), as well as federal criminal statutes covering conspiracies to deprive civil rights. (*Id*. at 4.) He seeks money damages, an order to stop the Defendants from treating other probationers in the manner in which he has been treated, and an order that the Defendants be fired from their jobs. (*Id*. at 6.)

A review of public records indicates that Horsch was convicted in Chester County by way of a guilty plea on March 16, 2018 for making terroristic threats and theft by unlawful taking and sentenced to a maximum term of 23 months followed by two-year period of probation. *Commonwealth v. Horsch*, CP-15-CR-0002502-2017 (C.P. Chester). He was also arrested in Philadelphia on January 4, 2024 and charged with failing to register as a sex offender in violation of 18 Pa. Cons. Stat. § 4915, *Commonwealth v. Horsch*, CP-51-CR-0000081-2024 (C.P. Philadelphia), possibly the source of his allegation of a "new case in Philadelphia," charging him with absconding. Horsch had been previously convicted on child pornography charges in Chester County in 2013 and sentenced to incarceration and a period of probation, as well as the requirement that he register as a sex offender. *See Commonwealth v. Horsch*, CP-15-CR-0004229-2013 (C.P. Chester). The public dockets for Horsch's 2013 child pornography conviction in Chester County and for his 2017 case in Chester County indicate that a probation violation report was filed on December 12, 2023 by Chester County Adult Probation. A pre-sentence investigation report for the violation was filed on January 10, 2024, but the violations in both cases remains open.

II.     STANDARD OF REVIEW

The Court will grant Horsch leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Horsch is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

**III.   DISCUSSION**

Horsch cited numerous criminal statutes in his Complaint but used the Court's form available to prisoners to bring civil rights violations. Construing his allegations liberally, the Court will consider his allegations under the standards applicable to civil claims against state actors for violation of an individual's constitutional rights since "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The vehicle by which federal constitutional claims may

---

[3] Because Horsch is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

4

be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Civil Claims Based on Criminal Statutes

Horsch cites several federal criminal statutes in his Complaint, namely 18 U.S.C. § 1038 (covering false information and hoaxes related to certain other crimes; part of 18 U.S.C. § Ch. 47 also cited by Horsch), § 241 (conspiracy against civil rights), § 242 (deprivation of rights under color of law); § 1621 (perjury), 1623 (false declaration before a grand jury), § 2234 (authority exceeded in executing a warrant), and § 2381 (treason). To the extent he seeks to assert civil liability based on those statutes, his claims are not plausible. Criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."). Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."). The fact that a federal statute has been allegedly violated and some person harmed does not automatically give rise to a private cause of action for the

5

injured person.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).

Specifically, the perjury statute, § 1621, does not give rise to civil liability. *Howard v. Paye*, 188 F. Supp. 3d 496, 499 (E.D. Pa. 2016) (collecting cases and holding that "Howard cannot state a claim under 18 U.S.C. § 1621 because that federal criminal statute does not give rise to civil liability").  The grand jury statute, § 1623, also does not provide a plaintiff with a private cause of action. *Olexsak v. Jones*, No. 21-20026, 2022 WL 2980985, at *4 (D.N.J. July 28, 2022).  Neither does the treason statute, § 2381, since treason is a criminal act taken against the United States. *See Florance v. Bush*, No. 09-1470, 2010 WL 2730615, at *12 (N.D. Tex. May 25, 2010); *Holland v. Olesky*, No. 18-658, 2018 WL 8803755, at *2 (W.D. Tex. Aug. 14, 2018), *report and recommendation adopted*, 2018 WL 8803940 (W.D. Tex. Sept. 7, 2018).  The Court has found no authority to support civil liability under § 2234 (authority exceeded in executing a warrant).

Sections 241 and 242 establish criminal liability for certain deprivations of civil rights and conspiracy to deprive civil rights. *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001); *Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992); *see United States v. Philadelphia*, 644 F.2d 187 (3d Cir. 1980) (declining to create civil remedy under 18 U.S.C. §§ 241 and 242).  However, a plaintiff cannot bring criminal charges against defendants through a private lawsuit, and these sections also do not give rise to a civil cause of action. *U.S. ex rel. Savage v. Arnold*, 403 F. Supp. 172 (E.D. Pa. 1975).[4]

---

[4] To the extent Horsch intended to assert a non-criminal civil rights conspiracy claim under § 1983, he has not plausibly alleged that type of claim since the Court ultimately concludes that he has failed to allege *any* plausible § 1983 claims.

While Section 1038 provides for a civil cause of action, Horsch does not allege plausibly how the statute – the Stop Terrorist and Military Hoaxes Act – relates to his claims against Pennsylvania Probation Officers. The Act criminalizes "engag[ing] in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of" numerous predicate criminal acts, including nuclear, biological, or chemical weapons, aircraft piracy, and sabotage of nuclear weapons and explosives. 18 U.S.C. § 1038(a)(1). Horsch has not alleged that the Defendants engaged in any such conduct. Accordingly, the civil liabilities provision of this Section does not provide a plausible basis for a claim. In short, all claims based upon federal criminal statutes are not plausible and are dismissed with prejudice.

### B.    Official Capacity Claims

Horsch has named each Defendant in both their individual and official capacities. Claims against probation officers named in their official capacities are indistinguishable from claims against their employer. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Pennsylvania's judicial districts, which are part of the Commonwealth's unified system of justice, include their probation and parole departments. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008). Thus, an official capacity claim asserted against a probation or parole official is actually a claim against the Commonwealth of Pennsylvania. *Graham*, 473 U.S. at 165-66 ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

The Third Circuit has repeatedly held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity." *Haybarger*, 551 F.3d at 197 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment) ).  As Pennsylvania has not waived its sovereign immunity, and because Congress has not explicitly abrogated immunity through authorizing legislation, the Eleventh Amendment operates as a bar to official capacity claims for damages against Cantymagli and Washington under Section 1983.  Accordingly, those claims are dismissed with prejudice.

C.     **Claims for Injunctive Relief**

As relief for his claims, Horsch seeks an order that the Defendants be fired from their jobs.  The Court is not empowered to grant such relief as a remedy under § 1983.  *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *2 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee") (citing *Teal v. Moody*, No. 15-1402, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019) ("[T]o the extent Teal suggests that this Court reprimand the Defendants and/or terminate their employment, this Court does not have the authority to reprimand state employees and/or terminate their employment."); *Theriot v. Woods*, No. 09-199, 2010 WL 623684, at *4-5 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]"); *see also*, *Joseph v. Dep't of Corr.*, No. 20-294, 2022 WL 4001116, at *6 (D. Al. Aug. 9, 2022), *report and recommendation adopted*, 2022 WL 3996357 (D. Al. Sept. 1, 2022) (holding that "[m]oreover, it is not apparent that the injunctive relief sought – the firing of

8

Defendants from their positions within DOC – is an available remedy" in a § 1983 claim noting that Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." (citing *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)).

Horsch also seeks an order directing the Defendants to stop treating other probationers in the manner in which he has been treated. This request is also improper. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts, thus ensuring that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) )). While an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). Thus, Horsch may not assert claims on behalf of other probationers. For these reasons, his claims for injunctive relief are dismissed with prejudice.

### D. Individual Capacity Claims

#### 1. Claims Involving Revocation of Probation

Horsch asserts individual capacity § 1983 claims against Cantymagli and Washington alleging they acted improperly in revoking his probation over a dispute about his compliance with counseling, and amended his revocation in Philadelphia to include a charge of absconding. He also alleges that Cantymagli testified falsely at a revocation hearing and made an improper

9

recommendation about his sentence.

Probation and parole officers "are entitled to absolute immunity when they are engaged in adjudicatory duties." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). By contrast, "[i]n their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity." *Id*. (citing *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986)). Adjudicatory acts entitled to absolute immunity are those acts that are "integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006); *Thompson v. Burke*, 556 F.2d 231, 237 (3d Cir. 1977); *see also Sample v. Johnson*, No. 21-1301, 2023 WL 2649458, at *4 (W.D. Pa. Mar. 27, 2023). Examples of adjudicative acts include making decisions to grant, revoke, or deny parole or probation, *see Breslin v. Brainard*, No. 01-7269, 2002 WL 31513425, at *7 n.10 (E.D. Pa. Nov. 1, 2002) (citing *Wilson*, 878 F.2d at 776; *Harper*, 808 F.2d at 284), or preparing a report to assist in judicial or administrative decision-making. *Williams*, 454 F.3d at 178 (citing *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992). Examples of executive or administrative acts include investigating allegations of parole violations. *Wilson*, 878 F.2d at 776. "Under this 'functional' approach, courts look to the nature of the functions being performed by the actor in question and evaluate the effect that exposure to liability would have on an appropriate exercise of that function." *Id*.

Cantymagli allegedly took actions to revoke Horsch's probation because he failed to attend counseling sessions, even though Cantymagli allegedly knew the counseling service was at fault and made an improper recommendation about his sentence. Cantymagli and Washington also allegedly amended Horsch's violation for a "new case in Philadelphia," charging him with absconding. Because these allegations concern adjudicatory duties, and Horsch fails to allege any act by Cantymagli or Washington that could be construed as an executive or administrative

10

act, his claims against them are not plausible since the Defendants' acts in revoking his probation or recommending a sentence are entitled to absolute immunity.

Horsch's claim that Cantymagli offered false testimony at his *Gagnon* hearings is also not plausible. Individuals are entitled to absolute immunity from civil rights claims based on testimony in court, including at pretrial hearings. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("[W]e conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial"); *Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988) (stating that witness immunity is "firmly bottomed in public policy") (citing *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (holding that under absolute witness immunity a convicted defendant could not state a claim for damages under § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial)).

### 2. Religious Discrimination Claim

Horsch also alleges that he was discriminated against because of his race, color, religious affiliation, and disability. He alleges that Washington violated his First Amendment rights in November 2022 when she made a derogatory comment about his religion, and both Defendants violated his right to be treated with dignity under the ADA. To the extent that these claims are not covered by absolute immunity, that is, they are not based on the Defendants' adjudicatory acts in revoking Horsch's probation, the allegations fail to state plausible claims.

First, Horsch fails to allege any facts concerning his race or color or how those factors were involved in the revocation of his probation or otherwise. These conclusory allegations are insufficient to assert a plausible civil rights claim. *Iqbal*, 556 U.S. at 678. Second, the allegation that Washington made a derogatory comment about Horsch's religion is too undeveloped to allege a plausible equal protection claim based on religious discrimination. To establish an equal

protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)). Moreover, an allegation that a defendant made verbal racist remarks does not state a § 1983 claim because verbal threats or taunts, without more, are insufficient to violate the Constitution. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Abuhouran v. Acker*, No. 04-2265, 2007 WL 603045, at *4 (E.D. Pa. Feb. 22, 2007) ("Although derogatory language in reference to plaintiff's race or ethnicity is strong evidence that the conduct in question is racially or ethnically motivated, it alone cannot support an equal protection claim."). Rather, the use of racial or religious epithets alone, though despicable and indefensible, does not amount to an equal protection violation absent "harassment or some other conduct that deprives the victim of established rights." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Mugavero v. Town of Kearny*, No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery does not, on its own, amount to a constitutional violation.").

While Horsch alleges a derogatory statement about his religion, he does not allege the context for Washington's statement. It is thus unclear whether he asserts that the comment about his religion was a substantial or motivating factor in the decision to revoke of his probation, an act for which Washington is absolutely immune. He also fails to allege he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class. To the extent the statement was not part of the revocation, Horsch has failed to allege that he suffered an adverse action as a result of Washington's statement.

### 3. ADA Claim

Finally, Horsch's reference to the ADA as a basis for a claim is also undeveloped. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. *See* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity"); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002). Although not a well-developed area of the law in this Circuit, some courts have held or implied that the ADA extends its anti-discrimination guarantees to the parole/probation context. *Thompson v. Davis*, 295 F.3d 890, 898 (9th Cir. 2002) ("we held that the ADA applies to state correctional systems. . . . The same holds true in the parole context." (internal citation omitted)); *Taylor v. Henderson*, 632 F. App'x 70, 75 (3d Cir. 2015) (*per curiam*) (citing *Thompson* and concluding that "Taylor's allegation that the [Parole] Board relied on his history of substance abuse is sufficient at the pleading stage" to allege a plausible ADA § II claim); *see also Webber v. Pennsylvania Bd. of Prob. & Parole*, 199 F. App'x 186, 188 (3d Cir. 2006) (*per curiam*)

(agreeing that appellees were entitled to summary judgment on Webber's ADA claims that he was denied parole in July 2003 based on a disability or perceived disability).

To allege a plausible claim for violation of Title II of the ADA, the plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and, (3) that such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Douris*, 192 F. Supp. 2d at 368. With respect to the first element, the ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. *Id*. § 12102(2)(A). With the passage of the Americans with Disabilities Act Amendments Act, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555. Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

Horsch fails to allege facts to show that he is a qualified individual with a disability. While he references the problem with scheduling psychiatric counseling and completing a mental health evaluation as allegedly improper bases for the Defendants' adjudicative act of revoking his probation, he has failed to provide facts indicating he has a physical or mental impairment

that substantially limits a major life activity, and that he suffered disability discrimination based on an act for which the Defendants are not absolutely immune. Accordingly, the ADA claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Horsch's Complaint because his claims are not plausible as pled. His claims based on the revocation of his parole will be dismissed in part with prejudice to the extent the claim is based on adjudicatory acts by the Defendants in revoking his parole. Horsch will be permitted to file an amended complaint if he is able to assert a claim against the Defendants based on a non-adjudicatory act they took in allegedly revoking his parole. The religious discrimination and disability discrimination are also dismissed without prejudice and Horsch will be granted leave to file an amended complaint if he is capable of alleging additional facts to address the defects the Court has identified in these claims. The balance of this claims are dismissed with prejudice. An appropriate Order will be entered separately.

                                       **BY THE COURT:**

                                       **/s/ Jeffrey L. Schmehl**
                                       **JEFFREY L. SCHMEHL, J.**